UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERDINAND FLOWERS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAPT. APRIL MAXFIELD, et al.,<br><br>　　　　　Defendants. | Case No. 22-cv-04935 BLF (PR)<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND** |

Plaintiff, a state prisoner currently confined at San Quentin State Prison ("SQSP"), filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against a correctional officer and two mental health care providers at SQSP. Dkt. No. 1. Plaintiff filed a motion for leave to proceed *in forma pauperis* which will be addressed in a separate order. Dkt. No. 2.

**DISCUSSION**

A.  **Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim

upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). Pro se pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.  Plaintiff's Claims**

Plaintiff claims that he wrote two separate letters to a CDCR executive staff member regarding his status and needs as a mental health patient: the first in December 2021, and the second in March 2022. Dkt. No. 1 at 3-4. The second was a follow-up to the first, to which he had received no response. *Id.* at 4. Plaintiff claims both envelopes were processed as "'CONFIDENTIAL MAIL' correspondence," and had them deposited into the United State Postal Service mail system for delivery. *Id.* at 3-4. Plaintiff claims he never received a response to either of his letters, but "at some untold time" after he had mailed the letter, Defendant Capt. Maxfield "some how came into possession of the two letters… against [his] knowledge without [his] authority." *Id.* at 4. Plaintiff claims that Defendant Maxfield used the letters' contents to discover the name and address of his mother, whom Defendant asked some questions inquiring into the nature of Plaintiff's personal and confidential business that was written in the letters. *Id.* at 5. Plaintiff's mother informed him about the telephone call she received from Defendant Maxfield on March 10, 2022. *Id.* On April 6, 2022, Defendant Maxfield admitted to Plaintiff that she had possession of the letters and had communicated with his mother about the contents. *Id.* Plaintiff claims that in intercepting the letters, Defendant Maxfield interfered and prevented him from having communication regarding his mental health care with "other mental health care related persons." *Id.* at 6. Plaintiff claims his allegations against Defendant Maxfield are facts in support of the following claims against the social workers.

*Id.* at 7.

Plaintiff claims that on November 8, 2021, he had a mental health care visit with Defendant Charm Hedgemark, a psychiatric social worker. Dkt. No. 1 at 7. During the visit, he made several requests, including the following: (1) to be placed on proper psychiatric medication for his depression as the current prescribed medications were not working, and (2) to be transferred to another CDCR facility, like Atascadero State Hospital, where he could receive necessary treatment and medication suitable for his current mental health condition. *Id.* Defendant Hedgemark responded that such facilities he requested were not available through the CDCR, and refused to look at paperwork which Plaintiff offered to show otherwise. *Id.* She informed Plaintiff that he would continue on his current mental health program which would not be changed. *Id.*

On January 3, 2022, Plaintiff had a meeting with psychologist Tenisha White, a non-party. *Id.* at 8. He made the same requests to Ms. White as he had to Defendant Hedgemark, but Ms. White expressed a willingness to look at the papers he offered to support his request for a transfer to another facility. *Id.* She scheduled another visit so that Plaintiff could show her the papers. *Id.*

On January 10, 2022, Plaintiff appeared for the scheduled visit with Ms. White, but was seen instead by Defendant Jacob Schmidt, supervising psychologist. *Id.* Plaintiff repeated his prior requests and offered the papers to support his request for a transfer, to which Defendant Schmidt responded: (1) he did not want to see the papers; (2) SQSP did not offer the medications, mental health care, treatment, and housing that plaintiff was requesting; (3) that he was familiar with the SQSP affiliated mental health facilities that Plaintiff was referring to; (4) that Plaintiff could not be transferred to those facilities; and (5) that Plaintiff's current medication, treatment, and housing would continue without change. *Id.* at 9. He then ended the mental health visit with Plaintiff. *Id.*

Plaintiff claims that after he left Defendant Schmidt's office, he encountered Ms. White outside. *Id.* During this encounter, Plaintiff offered Ms. White the papers he had

3

brought, and she proceeded to view them. *Id.* While Ms. White was looking at the papers, Defendant Schmidt came over and discouraged Ms. White from providing further assistance to Plaintiff by stating that he had already handled Plaintiff's mental health concerns and repeated what he had informed Plaintiff during their meeting. *Id.* He then handed Plaintiff's papers back to him and ended the confrontation. *Id.* at 10. Plaintiff seeks damages. *Id.* at 11.

### C. Mental Health Needs

Liberally construed, it appears that Plaintiff is attempting to state an Eighth Amendment claim based on Defendant Maxfield's interference with his mail regarding his mental health care needs and Defendants Hedgemark and Schmidt's refusal to entertain his requests for changes to his treatment.

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). A mentally ill prisoner may establish unconstitutional treatment on behalf of prison officials by showing that officials have been deliberately indifferent to his serious medical needs. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Doty*, 37 F.3d at 546; *see, e.g.*, *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2010) (a heightened suicide risk or an attempted suicide is a serious medical need; reversing grant of summary judgment to transporting police officers where plaintiffs presented sufficient evidence for a jury to find that the decedent's pre-suicidal actions objectively evidenced a serious medical need), *reinstated as modified by* 658 F.3d 897 (9th Cir. 2011); *Capps v. Atiyeh*, 559 F. Supp. 894, 916 (D. Ore. 1983) (inmate suffers 8th Amendment pain whenever he must endure untreated serious mental illness for any appreciable length of time).

Under the Eighth Amendment, deliberate indifference requires a showing that prison officials possess a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Specifically, it must be shown both that officials were subjectively aware of the serious medical need and failed to adequately respond to that need. *Conn*, 591 F.3d at 1096. Additionally, the officials' actions must be the cause of the injury suffered as a result of their deliberate indifference. *Id.* at 1098.

Plaintiff's allegations are insufficient to state an Eighth Amendment claim against any named Defendant. Regarding the first element, nowhere does Plaintiff allege that he suffered from a serious medical need which, if left untreated, could result in further significant injury or the unnecessary and wanton infliction of pain. *Doty*, 37 F.3d at 546. Plaintiff alleges that he told Defendant Hedgemark that his current medication for depression was not working but offers no explanation as to how its ineffectiveness was causing further significant injury or the unnecessary and wanton infliction of pain. Dkt. No. 1 at 7. Nor does Plaintiff refer to any other specific mental health condition which was not being properly treated. Rather, Plaintiff describes dissatisfaction with his mental health treatment and housing and belief that another facility would be more suitable to meet his needs. However, he provides no specific explanation as to why the current mental health treatment plan was inadequate and how a failure to change it would result in further significant injury.

Secondly, there is no allegation that Defendants were each subjectively aware of a serious medical need that was not being treated and failed to adequately respond to that need. With respect to Defendant Maxfield, the allegations against her do not indicate that she was aware that Plaintiff was suffering from a serious medical need that was not being treated. Furthermore, there is no allegation that she intercepted the letters with the intention of interfering with Plaintiff's mental health treatment. Rather, Plaintiff alleges she interfered and prevented him *from communicating with others* regarding his mental health treatment. Furthermore, there is no allegation that Defendant Maxfield's actions

5

resulted in further significant injury to Plaintiff. With respect to Defendants Hedgemark and Schmidt, Plaintiff does not allege that they were aware of any inadequacy in his mental health treatment plan, which if left untreated would result in further significant injury and refused to make necessary changes. Rather, the allegations against them indicate that they did not believe a change in Plaintiff's mental health treatment was appropriate or feasible. Nor does Plaintiff allege that their actions, or failure to act, resulted in any injury.

Plaintiff shall be granted leave to amend to file an amended complaint that sets forth sufficient facts to state a cognizable Eighth Amendment claim for his mental health needs.

**D.  Mail**

Lastly, with respect to Defendant Maxfield's interference with Plaintiff's mail, it is unclear whether he states a cognizable claim.

Prisoners enjoy a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). But neither the Supreme Court nor the Ninth Circuit has determined whether prison officials are entitled to read inmates' outgoing and incoming non-legal mail. Other courts are split on this issue, with some holding that non-legal mail cannot be read without good cause, *see, e.g.*, *Jolivet v. Deland*, 966 F.2d 573, 576 (10th Cir. 1992) (prison employee violated inmate's right to privacy by reading and copying personal mail); *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (arbitrary opening and reading of inmate's personal mail based upon guard's personal prejudices violates First Amendment); *Balabin v. Scully*, 606 F. Supp. 176, 183 (S.D.N.Y. 1985) (regulation creates liberty interest in not having mail opened without cause), and others holding that non-legal mail may be read routinely, *see, e.g.*, *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir.) (prisons may read inmates'

outgoing mail), *cert. denied*, 502 U.S. 951 (1991); *Gaines*, 790 F.2d at 1305 (allowing mail to be "spot checked" and read).  Plaintiff shall be granted leave to amend to attempt to state sufficient facts showing that Defendant Maxfield had no legitimate penological interest in reading his mail and impinging on his First Amendment rights.  However in preparing an amended complaint, Plaintiff must keep in mind Rules 18(a) and 20(a) as discussed below.

### F.     Joinder

Even if Plaintiff can state a cognizable First Amendment claim against Defendant Maxfield, there is potential joinder issue.  "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  Accordingly, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  "Unrelated claims against different defendants belong in different suits," not only to prevent the sort of "morass" that a multi-claim, multi-defendant suit can produce, "but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of required fees."  *Id.* (citing 28 U.S.C. § 1915(g)).  Parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

Therefore, under Rule 18(a), Plaintiff may join multiple claims against Defendant Maxfield, i.e., both First and Eighth Amendment claims.  However, under Rule 20(a), he may only join all three Defendants in the same action if his right to relief is asserted against all three of them jointly or severally, or his claims arise out of the same transaction, occurrence, or series of transactions or occurrences.  In other words, Plaintiff may only sue

7

all three Defendants in the same action if he states a cognizable Eighth Amendment claim against all three, and only then may join other claims against them which satisfy Rule 20(a).  Otherwise, Plaintiff may not join his First Amendment claim against Defendant Maxfield to his Eighth Amendment claims against Defendants Hedgemark and Schmidt because they are unrelated.

Plaintiff has been granted leave to file an amended complaint to correct the deficiency with respect to his Eighth Amendment claims.  If he cannot in good faith state sufficient facts to support an Eighth Amendment claim against Defendant Maxfield, he may not include his First Amendment claim against her in this action.  Instead, he must file the First Amendment claim against Defendant Maxfield in a new action and pay the filing fees.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The complaint is **DISMISSED with leave to amend**.  Within **twenty-eight (28) days** of the date this order is filed, Plaintiff shall file an amended complaint to correct the deficiencies described above.  The amended complaint must include the caption and civil case number used in this order, Case No. 22-cv-04935 BLF (PR), and the words "AMENDED COMPLAINT" on the first page.  If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed.  The amended complaint supersedes the original, the latter being treated thereafter as non-existent. *Ramirez v. Cty. Of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Consequently, claims not included in an amended complaint are no longer claims and defendants not named in an amended complaint are no longer defendants.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992).

2. **Failure to respond in accordance with this order in the time provided will result in the dismissal with prejudice of this action for failure to state a claim,**

**without further notice to Plaintiff.**

3. The Clerk shall include two copies of the court's complaint with a copy of this order to Plaintiff.

**IT IS SO ORDERED.**

Dated: __January 4, 2023_____   /s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge

Order of Dism. With Leave to Amend
PRO-SE\BLF\CR.22\04935Flowers_dwlta